# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

ADS Holdings, Inc.,

        Plaintiff,

            **MEMORANDUM OPINION**

v.                   **AND ORDER**
                   Civ. No. 06-3715 ADM/AJB

Federal Insurance Company,

        Defendant.

_____

George Warner, Jr., Esq., Bernick, Lifson, Greenstein, Greene, & Liszt, P.A., Minneapolis, MN, and Joshua L. Mallin, Esq., Weg and Myers, P.C., New York, NY, on behalf of Plaintiff.

David E. Bland, Esq., and Stacey P. Slaughter, Esq., Robins, Kaplan, Miller & Ciresi L.L.P., Minneapolis, MN, on behalf of Defendant.

_____

## I. INTRODUCTION

      This matter is before the undersigned United States District Judge for consideration of Plaintiff ADS Holdings, Inc.'s ("ADS") Objection [Docket No. 210] to Magistrate Judge Arthur J. Boylan's April 1, 2008, Report and Recommendation ("R&R") [Docket No. 209]. Judge Boylan recommends that an adverse inference instruction be given to the jury regarding ADS's failure to disclose information required by Federal Rule of Civil Procedure 26(e)(1). For the reasons set forth below, ADS's Objection is overruled.

## II. BACKGROUND

      ADS owns and operates equipment for manufacturing compact discs and digital versatile discs ("DVDs"). Compl. [Docket No. 9] ¶ 9. ADS purchased an "all risk" property insurance policy from Defendant Federal Insurance Company ("Federal") that was effective from October 1, 2004, through October 1, 2005. Id. ¶ 12. In July and August 2005, ADS's facility in Plymouth, Minnesota, experienced five power outages. Id. ¶ 14. ADS alleges that these power

outages damaged its Sony Slimline HD DVD glass mastering machine ("Slimline"), which ADS ultimately replaced in January 2006.  Id. ¶¶ 16-19.  After notifying Federal of its loss, ADS removed several parts from the Slimline so that they could be tested.  In March 2006, ADS sent the Slimline's Power AMP PCB (the "Circuit Board") to Chemir Analytical Services ("Chemir") in Maryland Heights, Missouri.  Herries Aff. [Docket No. 174].  Chemir finished testing the Circuit Board on May 31, 2006.  Id.  Chemir subsequently destroyed the Circuit Board under its routine destruction policy because the Circuit Board was inadvertently designated as a "non-legal" sample.  Id.  Based on the evidence in the record, it appears Chemir destroyed the Circuit Board some time between May 31, 2006, and May 2007.  Sapia Dep. (Slaughter Decl. [Docket No. 160] Ex. D) at 55-57.

Chemir issued a report discussing the test results on June 6, 2006.  Mallin Decl. [Docket No. 176] Ex. A.  Chemir's report stated that the Circuit Board contained "a capacitor that was almost completely burned out with dark charcoal like material" (the "blown capacitor").  Id. at 3.  On June 26, 2006, ADS submitted a proof of loss under the insurance policy for the damages caused by the July and August 2005 power outages.  Compl. ¶ 20; Slaughter Decl. Ex. F.  ADS's cover letter stated that "[a]ll of the evidence empirically demonstrates that as a consequence of a series of power outages the HCL [hydrochloric acid], primarily in the form of gas, did not exit the [Slimline] system as designed.  As a result the HCL caused corrosion to the most integral part of the machine, the LBR [laser beam recorder]."  Slaughter Decl. Ex. F at 2.

ADS initiated this litigation in September 2006 after Federal failed to indemnify and reimburse ADS.  Compl. ¶ 21.  On November 8, 2006, Judge Boylan issued an Order (the "Preservation Order") [Docket No. 36] requiring ADS to retain the Slimline equipment until the

2

conclusion of this case.

In a February 1, 2007, letter, Federal inquired as to whether ADS had retrieved the capacitor (on the Circuit Board) from Chemir so that it could be reinstalled on the Slimline for testing. Mallin Decl. [Docket No. 176] Ex. E. In a February 2, 2007, letter, ADS responded that Chemir still retained the Circuit Board and that Federal could inspect the Circuit Board on Chemir's premises. Id. Ex. F. On February 9, 2007, Federal served its Second Request for Production of Documents and Things. Id. Ex. H. Federal's document request numbers forty-seven and fifty-five requested the Circuit Board containing the failed capacitor. Id. Ex. H at 5-6. ADS responded that it would make the Circuit Board available for inspection at Chemir's premises.[1] Id. at 8, 11.

By August 2007, ADS's counsel learned that Chemir had inadvertently disposed of the Circuit Board. Herries Aff.; Sapia Dep. at 56-57. Despite the Preservation Order and ADS's previous representation to Federal that the Circuit Board was available for inspection, ADS did not supplement its discovery responses to inform Federal that Chemir had destroyed the Circuit Board.

In late October 2007, ADS consulted with Richard Wilkinson ("Wilkinson") to determine whether he could serve as an additional expert witness on loss causation. Mallin Decl. ¶ 3. On November 13, 2007, ADS filed a motion [Docket No. 111] to amend the deadline for disclosure of expert reports until November 30, 2007. Federal, which was still unaware that Chemir had

---

[1] ADS subsequently amended one of its responses to state that it would make the Circuit Board available at ADS's facility in Plymouth, Minnesota. Mallin Decl. Ex. J at 2. ADS avers that this amendment was a mistake. Pl.'s Mem. in Opp'n to Def.'s Mot. to Exclude [Docket No. 172] at 6-7.

destroyed the Circuit Board, did not oppose ADS's motion.  On November 21, 2007, Judge

Boylan granted ADS's unopposed motion.  Nov. 21, 2007, Order [Docket No. 124].  On

November 29, 2007, ADS disclosed Wilkinson's expert report to Federal.  Mallin Decl. Ex. M.

In his report, Wilkinson opines that the blown capacitor on the Slimline's Circuit Board was

caused by the July and August 2005 power outages.  Mallin Decl. Ex. M at 7.  Wilkinson based

his opinions on pictures of the Circuit Board.  Wilkinson Aff. [Docket No. 175] ¶ 5.  Wilkinson's

report did not disclose that the Circuit Board had been destroyed.

On December 14, 2007, Federal filed a Motion to Exclude [Docket No. 132] Wilkinson's

expert testimony for failure to meet the expert report disclosure requirements of Federal Rule of

Civil Procedure 26(a)(2)(B).  Four days later, Federal learned through the deposition testimony

of Alan Sapia, a Chemir employee whom ADS designated as an expert, that Chemir had

destroyed the Circuit Board.  Sapia Dep. at 55-57.  ADS's counsel confirmed at the deposition

that he too was aware that Chemir destroyed the Circuit Board.  Id. at 57.

On January 3, 2008, Federal supplemented its Motion to Exclude with arguments that:

(1) Wilkinson's testimony should be excluded under Federal Rule of Evidence 702, which sets

the standard for admissibility of expert opinion testimony, because Wilkinson had not physically

examined the Circuit Board; (2) ADS's experts should be excluded from testifying about the

Circuit Board as a sanction for spoliation of the evidence; and (3) the Court should impose

sanctions for ADS's violations of Federal Rules of Civil Procedure 26(a)(1), 26(e)(1), 26(g)(1).[2]

In a March 28, 2008, Order [Docket No. 208], Judge Boylan denied Federal's Motion to the extent it sought to exclude the testimony of Wilkinson and ADS's other experts. Judge Boylan concluded that a sanction for spoliation was inappropriate because the evidence does not support a finding that ADS "intentionally destroyed evidence with a desire to suppress the truth." Bakhtiari v. Lutz, 507 F.3d 1132, 1135 (8th Cir. 2007) (noting that such a finding is required for a spoliation sanction). However, Judge Boylan held that as a sanction for ADS's failure to disclose the destruction of the Circuit Board as required by Rule 26(e)(1), he would issue a R&R recommending this Court give an adverse inference instruction to the jury. Additionally, as a sanction for violating the Preservation Order, Judge Boylan ordered ADS to pay Federal's attorney's fees and costs for bringing the Motion to Exclude.

On April 11, 2008, ADS timely filed its Objection to Judge Boylan's recommendation that this Court give an adverse inference instruction. ADS has not appealed Judge Boylan's decision awarding Federal its attorney's fees and costs for bringing its Motion to Exclude.

---

[2] Rule 26(a)(1) sets forth initial disclosure requirements. Rule 26(e)(1) states in relevant part that a party "who has responded to a[] . . . request for production . . . must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." Rule 26(g)(1) provides in relevant part that by signing a Rule 26(a)(1) disclosure, "an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry[, the disclosure] . . . is complete and correct as of the time it is made . . . ."

# III. DISCUSSION

## A.      Standard of Review

The parties agree that Judge Boylan's determination that an adverse inference instruction should be given is a non-dispositive matter for the purpose of Federal Rule of Civil Procedure 72.  Def.'s Resp. [Docket No. 213] to Pl.'s Objection at 2; Pl.'s Reply [Docket No. 220] to Def.'s Resp. at 2.[3]  Rule 72(a) governs a district judge's review of a magistrate judge's decision of a non-dispositive matter.  Under Rule 72(a), a district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."

## B.      ADS's Objection

ADS does not dispute that it violated Rule 26(e)(1) when it failed to supplement its discovery responses to notify Federal that the Circuit Board was destroyed.  However, ADS contends that an adverse inference instruction is inappropriate because Federal was not prejudiced by the delay.  Federal Rule of Civil Procedure 37(c)(1) provides in relevant part that:

> If a party fails to provide information . . . as required by [Rule 26(e)], the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard . . . may inform the jury of the party's failure.

Judge Boylan determined that Federal was prejudiced because "[h]ad Federal know[n] of the board's destruction . . ., Federal could have made the proper objections to ADS' motion to extend expert disclosures."  March 28, 2008, Order at 18.

---

[3] Although such briefs are not normally permitted, the Court grants ADS's request for leave to file a reply brief [Docket No. 220] to Federal's Response to ADS's Objection.  The primary reason for granting ADS's request is the agreement of the parties, reflected in ADS's reply brief, regarding the applicable standard of review.

In its Objection, ADS argues Federal has not been prejudiced because "Mr. Wilkinson . . . never gained an unfair advantage over Federal's experts who have the same opportunity to view the same photographs of [the] circuit board and capacitor viewed by Mr. Wilkinson." Objection at 7-8. However, as Judge Boylan noted, "[w]hile photographic evidence of physical damage to an item may suffice to provide an inference that it has suffered some harm, Federal's task of determining whether the effect of the damage could have been trivial may prove to be substantially more difficult." March 28, 2008, Order at 21.

ADS also argues that Federal has not been prejudiced because its experts had access to the Circuit Board before Chemir inadvertently destroyed it. However, Wilkinson's expert report sets forth a new theory that the power outages caused a blown capacitor, which resulted in the malfunctioning of the Slimline. Prior to Wilkinson's expert report, ADS's only theory of causation was that the power surges caused gaseous hydrochloric acid to corrode the Slimline's laser beam recorder. Therefore, despite Federal's prior access to the Circuit Board, Federal is prejudiced because its experts did not have reason to test whether the power outages directly damaged the capacitor.

ADS next contends that Judge Boylan's recommendation is clearly erroneous or contrary to law because "Federal never established in its motion papers any type of testing that it would now conduct on the circuit board to challenge Mr. Wilkinson's conclusion . . . that as a result of the power outages, a capacitor of the circuit board had blown." Objection at 6-7. However, this argument overlooks the fact that Wilkinson, ADS's own expert, stated in his Affidavit that if he had access to the Circuit Board, he would measure the conductivity of the Circuit Board to confirm that it had shorted. Wilkinson Aff. ¶ 10. Therefore, ADS cannot argue that the record

was insufficient regarding the tests that Federal could perform to test the soundness of Wilkinson's expert report.[4]

Having rejected all of ADS's arguments, this Court overrules ADS's Objection.  Judge Boylan's recommendation that this Court give an adverse inference instruction to the jury regarding ADS's failure to disclose information required by Rule 26(e)(1) is neither clearly erroneous nor contrary to law.  The specific language of the adverse inference instruction will be determined at trial after the contours of the expert testimony have been established.

---

[4] In reaching this conclusion, the Court has not relied on any of the evidence Federal attached to its Response to ADS's Objections.  Therefore, it is unnecessary to address ADS's argument that Federal improperly attached new evidence to its Response to ADS's Objection.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.     Plaintiff ADS Holdings, Inc.'s Objection [Docket No. 210] to Magistrate Judge

Arthur J. Boylan's April 1, 2008, Report and Recommendation [Docket No. 209]

is **OVERRULED**;

2.     The Report and Recommendation is **ADOPTED**; and

3.     ADS's request for leave to file a reply brief [Docket No. 220] is **GRANTED**.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  May 13, 2008.